HARDY, Judge.
This suit involves a contest with reference to two conflicting instruments, each of which is contended by the parties involved to constitute the last will and testament of Lorene Blue Cordaro made in olographic form.
The material facts are undisputed. Lorene Blue Cordaro,'a resident of Bossier Parish died in the City of Shreveport on May 21, 1956, survived by her husband, Dominic J. Cordaro, and by two sisters and a brother, leaving neither ascendants nor descendants. By petition filed in Probate Proceedings No. 2038 in the Twenty-Sixth Judicial Court of Bossier Parish on May 28, 1956, one of decedent’s sisters, Sheba O. Wappler, presented for probate a purported olographic last will and testament of decedent dated January 10, 1956. On May 31, 1956, decedent’s surviving husband, Dominic J. Cordaro, in ex parte proceedings filed under No. 2042 on the Probate Docket of the same court, presented and caused to be probated, ‘by judgment rendered in said proceeding, an instrument purporting to be the olographic last will and testament of the decedent dated September 27, 1954. By petition dated and filed June 12, 1956 in the same court under docket No. 21,074, Sheba O. Wappler prayed for the nullity of the judgment rendered in Probate Suit No. 2042 and for recognition of the asserted last will and testament which she had presented for probate in Probate Suit -No. 2038 on the docket of the court. By petition dated and filed Juné 11, 1956 in Suit No. 2038 on the Probate Docket of the said court, Dominic J. Cordaro opposed the validity of the instrument dated January 10, 1956 and prayed that the same be declared null, void and of no effect. Subsequently Dominic J. Cor-daro filed an exception of no cause of action and an answer to plaintiff’s petition in Suit No. 21,074. By agreement these actions were consolidated, and, after trial, there was judgment in Probate Suit No. 2038 recognizing the instrument dated January 10, 1956 as the last will and testament pf the decedent, and a 'separate judgment was entered on the same date in Suit No. 21,074 revoking and annulling the judgment rendered in Probate Suit No. 2042. From these judgments Dominic J. Cor-daro, as opponent in Probate Suit No. 2038 and as defendant in Suit No. 21,074, has appealed.
The instrument dated September 27, 1954, admittedly constitutes an olographic will, valid in form in all respects. Under this will the testator left all of her property to her husband, Dominic J. Cordaro. In the asserted olographic will dated January 10, 1956 the testator bequeathed all of her property to her sister, Sheba O. Wappler, and the sister’s husband, Fred Wappler. It is the validity, vel non, of this document which presents the sole issue on appeal, for, unquestionably, if valid, being of a later date, it supersedes the disposition of decedent’s property made in the instrument 'dated September 27, 1954.
■ In connection with these proceedings it is necessary to make two additional ob *811 servations, first, that Fred Wappler, husband of Sheba O. Wappler, was made a party plaintiff in the action to annul the probate of the will dated September 27, 1954, and, second, that during the pendency of this appeal Dominic J. Cordaro filed a petition of voluntary bankruptcy and H. E. Harper, as Trustee in Bankruptcy, has been substituted as party appellant in lieu of the said Dominic J. Cordaro.
The single specification of error urged by counsel for appellant is that the purported will dated January 10, 1956 “ . . is invalid because it is not signed by the Testatrix. It is signed with the Testatrix’ first name -only: ‘Lorene’.” It is urged that the signature constituting solely the first name of the testatrix is not sufficient to satisfy the requirements of Article 1588 of the Civil Code, LSA, and as a consequence the judgment validating the document as the last will and testament of the decedent and admitting the same to probate constituted error.
The contested document is in the form of a letter admittedly directed to and received by plaintiff, Mrs. Sheba O. (Fred) Wap-pler, written by the hand of the decedent and .reading in its entirety as follows:
“Jan-10-1956
“310 Riverside Dr.
“Bossier City, La.
“Dear Sister — Mrs. Fred Wappler
“Nick tried to kill me. I am writting this to tell you I want all my property to go to you & Fred. I want to have an O. E. S. burial. Call Mrs. O. M. Waldrop, Coushatta Rd. is in charge of that.
“I want to buried at my place in Forset Park. Call Dr. W. L. Sewell at Baptist Church here in Bossier— Mrs. L. T. Manning on Wyche St.
Your Sister
Lorene”
No question is raised as to the fact that the name “Lorene” was appended by the hand of the decedent, but it is urgently con-tended that the use of the first name alone-is not valid as a signature to an olographic testament. This argument is predicated upon the provisions of LSA-C.C. Article 1588 which reads:
“Olographic Wills. — The plographic testament is that which- is written by the testator himself..
“In order to be valid, it must be-entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State.”.
Learned counsel for appellant relies heavily upon the case of Succession of Armant, 43 La.Ann. 310, 9 So. 50, and additionally cites in support of his contention Succession of Bechtel, La.App., 99 So.2d 495; In re Poland’s Estate, 137 La. 219, 68 So. 415; Succession of Bradford, 124 La. 44, 49 So. 972; Succession of Dyer, 155 La. 265, 99 So. 214, arid Succession of Fitzhugh, 170 La. 122, 127 So. 386.
We may dispose of a number of the above cited cases on the ground of factual distinctions. In the Fitzhugh case the testatrix did not affix any signature on the single sheet of paper which .contained'certain testamentary dispositions, and" the court declared that the superscription and signature of the testatrix on an envelope in which the purported will was enclosed did not accord with the codal requirement that the testament be signed. The identical fact and the same holding were involved in the matter of Poland’s Estate. In Succession of Dyer, while the will itself was in proper form, the court held invalid an unsigned postscript. In Succession of Bechtel our brethren of the Orleans Court refused to give effect to an unsigned document, rejecting the contention that the signature on a separate sheet of paper was a valid compliance with the codal article.
Diligent counsel have not cited, nor has our research disclosed, any case in Louisiana jurisprudence which has determined *812 the exact issue presented, that is, whether a signature consisting solely of the first name of the testator adequately complies with the codal requirement that the docu-unent be “signed.”
The rejection of the above cited cases brings us finally to the case of Succession of Bradford and that of In re Armant’s Will, both cited supra.
In the Bradford case the will of the testator in olographic form was attacked, first, on the ground of improper designation of the beneficiary, and, second, because of the alleged insufficient signature of the testator. The court held that the signature “J. W. Bradfor” was sufficient, despite the fact that the testator’s name was “J. W. Bradford.” However, counsel for appellant relies upon certain references to French authorities and jurisprudence contained in the opinion of the court which, so he contends, held that the use of a testator’s first name is valid only if the testator habitually signed other official acts in such manner. It is true that the opinion in the Bradford case contains such an expression, but it is substantially restricted and qualified by other observations relating to the French commentators and jurisprudence. The opinion makes, inter alia, the following observations [124 La. 44, 49 So. 973.]:
(1) “The text of the Code Napoleon being the same as that of our Code, this French jurisprudence is highly instructive; but by reproducing it here this court does not mean to commit itself to everything that is there said.”
(2) “In France, as a general proposition, any signature which will identify the testator as the author of the testament will suffice; such identification ibeing the sole object of the signature. .See, to that effect, Duranton, Vol. 9, No. 39; Vazeille, Commentaries on Art. 970, No. 7; Marcade son, Art. 970, No. 41; Troplong, Des Donat, et Test. Vol. 3, No. 1495; Dalloz, Rep. De Legis, Vol. 16, No. 2723; Demolombe, Don. et Test. Vol. 4, No. 102, p. 92; Id. No. 110, p. 98. Contra, Toullier, Vol. 5, No. 373.”
(3) “According to some of the commentators, the family name without the Christian name, is sufficient, but is indispensable. Toullier, VI, 5, Nos. 373 et 374; Laurent, Vol. 13, No. 222; Hue., Vol. 6, No. 278; Baudry-Lacantinerie et Colin, Vol. 2, Nos. 1965 et 1971,”
(4) “According to other commentators, a signature to a will expressed otherwise than by the family name is sufficient, whether the expression be merely by the Christian name of the testator, or by any other designation, so long as it is that which the testator was in the habit of using in signing acts. And in that sense is the French jurisprudence, Dalloz, Juris.Gen.Dis-posit, Entre Vifs, Nos. 2723, 3008; Id. Supplement, No. 679; Dalloz, Juris. Gen. p. 848; Id. p. 90; Merlin, Rep. Vo. signature, § 3, art. 4; Demolombe, Vol. 21, Nos. 102 et seq.; Aubry & Rau (4th Ed.) Vol. 7, § 666, p. 99; Planiol, Vol. 3, No. 2689.” (Emphasis supplied.)
(5) “On the other hand, a signature consisting only of the Christian name and the initial of the family name would not be sufficient, where the testator was not shown to have been in the habit of so signing. Demolombe, Vol. 21, No. 109; Aubry & Rau (4th Ed.) Vol. 7, § 666, p. 98; Baudry-Lacantinerie & Colin, Vol. 2, No. 1971.” (Emphasis supplied.)
(6) “The Supreme Court of Colmar has held, however, that even such a signature suffices, if from the circumstances of the case no doubt at all can arise but that the signature was intended by the testator to be his signature. Burg v. Keller, Colmar, July 5, 1870, Dalloz, Juris.Gen.1871, p. 105.”
*813 The emphasized portions of the above quoted excerpts apparently constitute the pertinent pronouncements upon which counsel relies. However, we cannot accept these as being controlling authority in view of the directly opposed principles drawn from the works of other commentators and the holdings in other cases which are obvious upon perusal of the above quotations.
Our examination of the opinion In re Armant’s Will has convinced us that counsel is in error in relying thereupon, first, because the facts are not apropros, and, second, because the conclusions of the court completely distinguish the issues on examination from those with which we are concerned in the instant case.
The instrument in the Armant case bore no signature whatsoever and the only inference of a signature was drawn from the caption at the very beginning of the olo-graphic writing; “Testament d’Aglae Ar-mant.” [43 La.Ann. 310, 9 So. 51].
The French authorities quoted in the opinion of the Supreme Court in the Ar-mant case did not discuss the form but rather the place of the signature, and the court held that under the French jurisprudence the will would fall for two reasons, first, that the writing of the name was not intended as a signature, and, second, because whether so intended or not, the signature was not at the end of the act.
As the result of our consideration of the document under examination we have found no difficulty in concluding that it complies with the requirements of LSA-C.C. Article 1588, inasmuch as it was entirely written, dated and signed by the hand of the testatrix.
The final question, therefore, is not whether the will was actually signed by the testator but whether the form of the signature is sufficient.
Unfortunately, by reason of our complete lack of qualifications as scholars of the French language, we have not been able to pursue this question into the sources of French jurisprudence and comment. Nonetheless, this deficiency does not detract from the firm conviction of the validity of our ultimate conclusion, which can only be shaken from such firm foundation by review and reversal at the hands of our Supreme Court, which tribunal numbers among its membership a number of French scholars.
We are convinced that the writing of January 10, 1956 complies with the requirements appertaining to an olographic will as provided in LSA-C.C. 1588. In support of this conclusion we rely particularly upon the quotation from the opinion in the Bradford case, cited “(2)” above, which we repeat as follows:
“In France, as a general proposition, any signature which will identify the testator as the author of the testament will suffice; such identification being the sole object of the signature.”
The above statement accords with our concept of the logical purpose of the codal requirement that the instrument be signed, and, as pointed out in our discussion of some of the above authorities, it is, for practical reasons, essential that the signature be affixed at the end of the document after the testator’s dispositions of his estate have been made.
We are further indebted for additional light on this question to the recent translation by the Louisiana State Law Institute of Planiol’s Treatise on the Civil Law, and make particular reference to the following extracts from Volume 3, Part 2:
“2869. Signature.
“An olographic will must be signed at the end of the instrument. The signature usually consists of the testator’s first name and last name, but this is not necessary. It suffices that the testator has used his usual signature, *814 which is characteristic for him.” (Authorities cited in footnote)
■ If the above comment stood alone it might lend some support to the contention that the signature “Lorene” was not the testator’s usual and characteristic signature, as the term is formally defined. However, it must be observed in this connection that the signature of the testator’s first name would be usual and characteristic if the writing was in the form of a letter directed to her sister, which is the fact in the instant case.
Any doubt which might arise from the above quoted section we think is dispelled by the footnote of authorities cited in the above reference, as follows:
“The most recent decisions are very liberal. See Besancon, 15 November 1921, S. 1923, 2. 38; Caen, 10 November 1927, S. 1928, 2. 69, compared with Req. 23 October 1899, D. 99, 1. 568, S. 1900, 1. 437, or Grenoble, 17 February 1911, S. 1911, 2. 79. The use of last name Saint Ange instead of the real last name Michallet was held valid (Paris, 7 April 1848, D. 48, 2. 90, S. 48. 2. 217). A bishop can sign with his initials and the name of his episcopal see. The will of Masillon signed “J. B., eveque de Clermont” was validated by the trial court; on appeal the parties made a settlement. Cf. also Marseille, 15 January 1931, Gaz.Pal., 18 March 1931 (signature of a letter by the [first] name).” (Emphasis supplied.)
Further support is found in the same Volume and Part of the above cited text under No. 2693, which reads:
“(2) The will can be made in the form of a letter sent to another person. The case law on this point is settled. [Footnote citations] The letter, must, however, be intended to be the will itself, not only an outline or draft. This case-law rule is even more remarkable because the Ordinance of 1735 (Art. 3) contained an express provision to the contrary.”
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.