MICHAEL E. KIRBY, Judge.
11This case involves a dispute over the validity of a handwritten document purporting to be the last will and testament of Anna Rita Babin King Caillouet. Robert J. Jenevein, the Administrator of the Succession of Anna Rita Babin King Caillouet, appeals the trial court judgment, which decreed that the document at issue met the form requirements of an olographic testament and that the olographic testament had been proven.[1] The appellee in this appeal is Children’s Hospital of New Orleans, the universal legatee[2] named by Ms. Caillouet in the purported will.
Ms. Caillouet died on July 8, 2003. She was widowed twice, and had no children. On August 11, 2003, Ms. Caillouet’s niece and two nephews, Jo Ann Baumann Lotz, Robert J. Jenevein and Gary P. Jenevein, filed a Petition to File Purported Olo-graphic Testament. The petitioners alleged that they are the only heirs of Ms. Caillouet. Attached to the petition was a two page handwritten document dated February 7, 2001, which was entitled “My Last Will” and which was signed “Auntie.” In this document, Ms. Caillouet included several particular | ¡^legacies[3] to petitioners and others, but left the balance and majority of her estate to Children’s Hospital.
The petition asked that Mr. Robert Je-nevein be confirmed as testamentary executor as requested by Ms. Caillouet in the purported testament, and that the trial court determine the validity of the document. Petitioners’ position is that the handwritten document does not meet the requirements for an olographic will as set forth in La. C.C. article 1575. Specifically, they allege that the word “Auntie” at the end of the document does not fulfill the signature requirement of La. C.C. article 1575. Children’s Hospital answered the petition, asserting that the document is a valid enforceable olographic will, and that the will expressed the desires and intent of Ms. Caillouet.
Following trial, the trial court rendered judgment decreeing that the document at issue met the form requirements of an olographic testament, and that the olo-graphic testament had been proven. In reasons for judgment, the trial court rejected the Administrator’s argument that the document lacked the requisite testamentary intent because it was not written in its entirety on the date indicated. The court found that the decedent’s testamentary intent was clear due the inclusion of the language, “I, Anna Rita Babin King Caillouet, hereby make this my last will *715 and testament, revoking all prior wills that I may have made.” The trial court also cited the Louisiana Supreme Court case of Succession of Smart, 214 La. 63, 36 So.2d 639 (1948), which held that an olographic will does not need to be written entirely on the same date.
|30n the issue of whether the decedent’s signing at the end of the document with the word “Auntie” fulfilled the signature requirement of La. C.C. article 1575, the trial court found that the word “Auntie” was written by Ms. Caillouet, and that Ms. Caillouet intended for the word “Auntie” to serve as her signature and that this act executed the testament. The court cited the case of Succession of Diaz, 617 So.2d 34 (La.App. 4 Cir.1993), in which this Court stated that when a testament is written in olographic form without the aid of counsel, the intention of the testator is to be given paramount importance.
On appeal, the appellant argues that the trial court erred in finding (1) that the handwritten document met the formal requirements of an olographic testament, (2) that the document bears a signature as required by La. C.C. article 1575 and (3) that the document was proven by the ap-pellee to be an olographic testament. La. C.C. article 1575 sets forth the requirements for an olographic testament as follows:
A.An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. Although the date may appear anywhere in the testament, the testator must sign the testament at the end of the testament. If anything is written by the testator after his signature, the testament shall not be invalid and such writing may be considered by the court, in its discretion, as part of the testament. The olographic testament is subject to no other requirement as to form. The date is sufficiently indicated if the day, month, and year are reasonably ascertainable from information in the testament, as clarified by extrinsic evidence, if necessary.
B.Additions and deletions on the testament may be given effect only if made by the hand of the testator.
The proponent of an olographic will has the burden of proving that it was entirely written, dated and signed by the testator. La. C.C.P. article 2903; Hamilton v. Kelley, 25,820, p. 6 (La.App. 2 Cir. 8/17/94), 641 So.2d 981, 986. Absent a finding of manifest error, in will contest cases, the factual findings of the trial court are accorded great weight and will not be disturbed on appeal. Succession of Armstrong, 93-2385 (La.App. 4 Cir. 4/28/94), 636 So.2d 1109, 1111, citing Succession of Daigle, 601 So.2d 10, 12-13 (La.App. 3 Cir.1992).
The main disputed issue in this appeal is whether or not Ms. Caillouet’s signing the word “Auntie” at the end of the purported olographic will satisfies the signature requirement of La. C.C. article 1575. Other issues presented at trial included whether the document lacked testamentary intent because it was not written entirely on the same date and whether the document was in Ms. Caillouet’s handwriting. We note that the appellant’s brief does not include any argument regarding the will not being written entirely on the same day. Appellant concedes in his brief that the document was written by Ms. Caillouet. The evidence presented at trial supports the trial court’s conclusion that Ms. Caillouet intended for this document to be her last will and testament. The trial court also correctly noted that La. C.C. article 1575 does not require that an olographic will be written in its entirety on the same date, and the Louisiana Supreme Court, in Succession of Smart, 214 La. 63, 36 So.2d 639 (1948), specifically found that there is no such requirement for an olo-graphic will.
*716 On the issue of whether or not the word “Auntie” qualifies as a signature, we refer to this Court’s decision in Succession of Bacot, 502 So.2d 1118 (La.App. 4 Cir.1987). In that case, a man who was known by his middle name signed an olographic will with his middle and last name only. An opponent of the will argued that the signature was invalid because the testator did not sign his full legal name. This Court agreed with the trial court’s finding that the signature was valid, |sstating that the fact that a testator does not use his full legal name does not render his signature invalid as long as the actual identity of the testator can be ascertained. Id. at 1122-1123, citing Succession of Cordaro, 126 So.2d 809 (La.App. 2 Cir.1961).
In Succession of Cordaro, 126 So.2d 809 (La.App. 2 Cir.1961), a woman made a disposition of her property in a document in the form of a letter addressed to her sister, and signed it using her first name only. In agreeing with the trial court’s finding that the signature was sufficient for the document to qualify as an olo-graphic will, the Second Circuit held that the sole object of a signature is the identification of the testator, and that any signature that will identify the testator as the author of the testament will suffice. Id. at 813.
In this case, the evidence presented at trial included testimony from Ms. Cail-ouet’s niece, Jo Ann Lotz, who stated that her children and grandchildren called Ms. Caillouet “Auntie” when they were young. Additionally, Ms. Caillouet’s cousin, Ruth Demandre, testified that Ms. Caillouet always referred to herself as “Auntie” when speaking of her nieces and nephews and their children. The trial court obviously found this evidence credible, and we find no error in that determination.
When a testament is written in olo-graphic form without the aid of counsel, the intention of the testator is to be given paramount importance. Succession of Diaz, 617 So.2d 34 (La.App. 4 Cir.1993). The trial court found that Ms. Caillouet intended to execute a last will and testament and intended for the word “Auntie” to serve as her signature, thereby fulfilling the signature requirement of La. C.C. article 1575. The record establishes that the word “Auntie” sufficiently identified Ms. Caillouet as the author of the testament. Considering the above-discussed | ficases on the issue of signatures in olographic wills, along with the evidence presented at trial on the issue of Ms. Caillouet being known as “Auntie,” we find no manifest error in the trial court’s ruling that the handwritten document meets the form requirements of an olographic testament, and that the validity of the olographic testament was proven.
For the reasons stated above, we affirm the trial court judgment.
AFFIRMED.

.The appellant’s brief also lists Jo Ann Bau-mann Lotz and Gary P. Jenevein as appellants, but the motion for suspensive appeal was filed only on behalf of Mr. Robert J. Jenevein, in his capacity as the Administrator of the Succession of Anna Rita Babin King Caillouet.

. A universal legacy is a disposition of all of the estate, or the balance of the estate that remains after particular legacies. La. C.C. article 1585.

. A legacy that is neither general nor universal is a particular legacy. La. C.C. article 1587.