| | | |
|---|---|---|
| **SUCCESSION OF ANITA WIMMER MCKLINSKI** | * | **NO. 2021-CA-0369** |
| | * | |
| | | **COURT OF APPEAL** |
| | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-08187, DIVISION "E"
Honorable Omar Mason, Judge
\* \* \* \* \* \*
**Judge Tiffany Gautier Chase**
\* \* \* \* \* \*

(Court composed of Chief Judge James F. McKay, III, Judge Terri F. Love, Judge
Tiffany Gautier Chase)


David M. Stein
Ernest G. Foundas
Richard J. Voelker
PUGH ACCARDO HAAS RADECKER & CAREY, LLC
1100 Poydras Street, Suite 3300
New Orleans, LA 70163

      COUNSEL FOR PLAINTIFF/APPELLANT


Frank W. Lagarde, Jr.
Amanda L. Sullivan
ATTORNEY AT LAW
4141 Veterans Memorial Blvd., Suite 212
Metairie, LA 70002


      COUNSEL FOR DEFENDANT/APPELLEE


      **REVERSED AND REMANDED**
      **NOVEMBER 10, 2021**

*TGC*
*JFM*
*TFL*

Andrea Malone (hereinafter "Ms. Malone") seeks review of the trial court's March 29, 2021 judgment granting Kenneth McKlinski's (hereinafter "Mr. McKlinski") "Petition to Annul Probated Testament." After consideration of the record before this court and the applicable law, we reverse the judgment of the trial court and remand the matter for further proceedings.

## Facts and Procedural History

On December 16, 2019, in the presence of a notary and two witnesses, Anita Wimmer McKlinski (hereinafter "Mrs. McKlinski") executed a three page notarial last will and testament. Mrs. McKlinski divided her estate between her three children: Ms. Malone (40%), Mr. McKlinski (20%) and Monica McKlinski (40%). Mrs. McKlinski affixed her full name and initials on the second and third pages of the will. On the first page of the will, she signed her initials but did not sign her full name. Mrs. McKlinski died on September 19, 2020.

On September 29, 2020, Mr. McKlinski filed a petition for administration and to appoint administrator, seeking to be appointed independent administrator of

1

the succession. Mr. McKlinski presented the December 16, 2019 will, asserted that it was invalid and sought to proceed intestate.[1]

On October 6, 2020, Ms. Malone filed a "Petition for Probate of Notarial Testament and Confirmation of Testamentary Independent Executrix." Ms. Malone was unaware of the petition for administration filed by Mr. McKlinski. On October 22, 2020, the acting duty judge signed letters of independent executrixship recognizing Ms. Malone as executrix and independent administrator of the succession, to serve without bond. On December 11, 2020, the matter was consolidated with the succession proceedings initiated by Mr. McKlinski.[2]

On February 18, 2021, Mr. McKlinski filed a "Petition to Annul Probated Testament." Mr. McKlinski argued that the December 16, 2019 will was invalid because Mrs. McKlinski failed to sign the will on the first page in violation of La. C.C. art. 1577. Mr. McKlinski maintained that the will was an absolute nullity. Ms. Malone opposed the motion asserting that the lack of a formal signature on the first page of the will was a minor deviation that did not rise to the level of exceptional circumstances required to invalidate the will. Ms. Malone argued that the cursive initials on the first page of the will constituted a valid signature. She maintained that the video, taken on December 16, 2019 depicting the execution of will, demonstrates Mrs. McKlinski's true intentions.

The matter went before the trial court on March 11, 2021. At the conclusion of the hearing, Ms. Malone attempted to formally introduce into evidence the December 16, 2019 video, along with corresponding transcript. The trial court

---

[1] On October 30, 2020, Mr. McKlinski posted the required bond of $812,500.00 and was confirmed as administrator of the succession.

[2] On November 17, 2020, Judge Kern Reese, who signed the letters of independent executrixship as duty judge, vacated his order.

2

denied the request for admission of evidence, stating that neither the video nor the transcript were considered by the trial court because they were irrelevant. By judgment dated March 29, 2021, the trial court granted Mr. McKlinski's "Petition to Annul Probated Testament."[3] In its reasons for judgment, the trial court noted that the burden of proof rests with the defendant, Ms. Malone, and she failed to meet that burden in establishing the authenticity of the will and compliance with all statutory requirements. Thus, the trial court determined that the December 16, 2019 will was null as it did not meet the formal requirements of La. C.C. art. 1577 because Mrs. McKlinski did not sign her full name on the first page of the will. This appeal followed.

## Standard of Review

"Absent a finding of manifest error, in will contest cases, the factual findings of the trial court are accorded great weight and will not be disturbed on appeal." *In re Succession of Caillouet*, 2005-0957, p. 4 (La.App. 4 Cir. 6/14/06), 935 So.2d 713, 715. "In reviewing a factfinder's factual conclusions, an appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong." *In re Succession of Horrell*, 2011-1574, p. 5 (La.App. 4 Cir. 4/11/12), 102 So.3d 139, 142.

## Discussion

On appeal, Ms. Malone presents two assignments of error asserting the trial court erred in (1) declaring the December 16, 2019 will a nullity; and (2) failing to consider extrinsic evidence to prove the authenticity of the will.

---

[3] The March 29, 2021 judgment also denied Ms. Malone's motion for new trial and motion to revoke appointment of administrator. Those rulings are not challenged on appeal.

## Burden of Proof

Before we consider the merits of the current matter, we first address who has the burden of proof in an action to annul a will. The trial court determined that the defendant, Ms. Malone, had the burden of proving the authenticity of the December 16, 2019 will pursuant to La. C.C.P. art. 2932(A), which provides:

> The plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In the latter event, the defendants have the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of law.

However, according to this codal article, the burden of proof rests with the plaintiff, Mr. McKlinski. He filed a "Petition for Administration and to Appoint Administrator" on September 29, 2020. Ms. Malone filed a separate probate petition which was consolidated into the succession proceedings initiated by Mr. McKlinski. On February 18, 2021, Mr. McKlinksi filed the "Petition to Annul Probated Testament." The filing of Mr. McKlinski's petition to annul was not within three months of the filing of his petition for administration. As such, the burden of proof remains with the plaintiff, Mr. McKlinski, and it was error for the trial court to determine that Ms. Malone was tasked with proving the authenticity of the will.

Additionally, La. C.C.P. art. 2932(B) provides that "[i]n an action to annul a notarial testament, a nuncupative testament by public act, or a statutory testament, however, the plaintiff **always** has the burden of proving the invalidity of the testament." (emphasis added). Thus, the burden of proof rests with Mr. McKlinski to prove the December 16, 2019 will is invalid.

**Validity of Will**

Mr. McKlinski maintains that the December 16, 2019 will is invalid because it fails to conform to the formal requirements of La. C.C. art. 1577. He asserts that La. C.C art 1577 is to be strictly construed and failure to adhere to the statutory requirements of the codal article deems the will invalid. Conversely, Ms. Malone argues the December 16, 2019 will is valid because it satisfies the formal requirements of La. C.C. art. 1577. She maintains that Mrs. McKlinski's act of signing her initials on the first page of the will, rather than her full name, does not invalidate the will. Ms. Malone asserts that this is only a slight deviation from the formal requirements of La. C.C. art. 1577, which provides:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
>
> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of _____, _____."

La. C.C. art. 1573 imparts that "[t]he formalities prescribed for the execution of a testament must be observed or the testament is absolutely null." In support of his position that the will is invalid, Mr. McKlinski relies on *Successions of Toney*, 2016-1534 (La. 5/3/17), 226 So.3d 397. In *Toney*, the notarial will of the testator was challenged as an absolute nullity for lack of form pursuant to La. C.C. art. 1577. 2016-1534, p. 2, 226 So.3d at 399. "Specifically, the plaintiff alleged that the

testament was not in compliance with the requirements of [La. C.C.] art. 1577, because the testament was not signed on each separate page, the attestation clause was not in proper form, and the notary, witnesses, and testator were not in the presence of each other at the execution of the testament." *Id*. The Louisiana Supreme Court made the following determination:

> The propounded testament in the present case failed to comply with the formal requirements of La. Civ.Code art. 1577 in [] several respects. First, La. Civ.Code art. 15[7]7(1) requires that the testator "shall sign his name [] at the end of the testament and on each other separate page." []. In this case, the first two pages of the will are not signed, but are only initialed "R.T." Further, the initials are in print rather than cursive writing. Although signatures come in a variety of forms, and although a few appellate courts have upheld wills where some pages were initialed rather than signed, we note that La. Civ.Code art. 15[7]7(1) unambiguously requires the testator to "sign his name at the end of the testament and on each other separate page," and merely initialing undoubtedly falls short of this requirement. Particularly where, as here, the initials are written in easily imitable print rather than cursive, we are hesitant to find that this deviation from the codal requirement is merely minor or technical. Although fraud was not alleged at the trial court level, signing one's name on each page of the will undoubtedly offers more heightened protection from surreptitious replacement of pages than mere initialing, particularly when the initialing is in print rather than cursive as is found here.

*Successions of Toney*, 2016-1534, pp. 9-10 (La. 5/3/17), 226 So.3d 397, 404–05, *overruled by Succession of Liner*, 2019-02011 (La. 6/30/21), 320 So.3d 1133 (emphasis omitted). However, *Toney* has been overruled by *Succession of Liner*, as noted by Ms. Malone. It is the *Liner* case which Ms. Malone asserts is supportive of her argument that Mrs. McKlinski signing her initials on the first page is a slight deviation of the will requirements that does not alone invalidate the will.

In *Liner*, which was recently decided by our Supreme Court, the testator executed two notarial wills, one in 2013 and one in 2015. 2019-02011, p. 1, 320 So.3d at 1135. The 2013 will was executed pursuant to La. C.C. art. 1577, while

6

the 2015 will was executed pursuant to La. C.C. art. 1579.[4] *Id.* The 2015 will contained the testator's signature on each separate page and at the end of the document but "only stated that it was 'signed' in the presence of the notary and witnesses." *Id.*, 2019-02011, p. 2, 320 So.3d at 1135. Two of the heirs petitioned to probate the 2015 will while another heir sought to have the 2015 will declared a nullity for failure to include the proper attestation clause. *Liner*, 2019-02011, p. 1, 320 So.3d at 1135. The trial court determined that the 2015 will was invalid

---

[4] La. C.C. art. 1579, Notarial testament, testator unable to read:

> When a testator does not know how to read, or is physically impaired to the extent that he cannot read, whether or not he is able to sign his name, the procedure for execution of a notarial testament is as follows:
>
> (1) The written testament must be read aloud in the presence of the testator, the notary, and two competent witnesses. The witnesses, and the notary if he is not the person who reads the testament aloud, must follow the reading on copies of the testament. After the reading, the testator must declare or signify to them that he heard the reading, and that the instrument is his testament. If he knows how, and is able to do so, the testator must sign his name at the end of the testament and on each other separate page of the instrument.
>
> (2) In the presence of the testator and each other, the notary and witnesses must sign the following declaration, or one substantially similar: "This testament has been read aloud in our presence and in the presence of the testator, such reading having been followed on copies of the testament by the witnesses [, and the notary if he is not the person who reads it aloud,] and in our presence the testator declared or signified that he heard the reading, and that the instrument is his testament, and that he signed his name at the end of the testament and on each other separate page; and in the presence of the testator and each other, we have subscribed our names this ____day of ____, _____."
>
> (3) If the testator does not know how to sign his name or is unable to sign because of a physical infirmity, he must so declare or signify and then affix his mark, or cause it to be affixed, where his signature would otherwise be required; and if he is unable to affix his mark he may direct another person to assist him in affixing a mark or to sign his name in his place. The other person may be one of the witnesses or the notary. In this instance, the required declaration must be modified to recite in addition that the testator declared or signified that he did not know how to sign his name or was unable to do so because of a physical infirmity; and that he affixed, or caused to be affixed, his mark or name at the end of the testament and on each other separate page.
>
> (4) A person who may execute a testament authorized by either Article 1577 or 1578 may also execute a testament authorized by this Article.

because the attestation clause was not "substantially similar to those set forth in La. C.C. art. 1579(2)." *Liner*, 2019-02011, p. 2, 320 So.3d at 1135. The Court of Appeal, Second Circuit, reversed the trial court determining that,

> despite the omission of the language "at the end" and "on each other separate page," the attestation clause does not fail because [testator's] signature actually appears on the bottom of each of the eight pages of the 2015 testament and where the notary and witnesses attested to [testator] signing in their presence.

*Id.*, 2019-02011, p. 2, 320 So.3d at 1136.

Originally, the Louisiana Supreme Court reversed the Court of Appeal, Second Circuit and reinstated the trial court's judgment which nullified the 2015 will. *Id.* However, on rehearing, our Supreme Court found that

> Courts must determine if a notarial will, with all formalities and evidence taken into consideration, reflects the testator was sufficiently protected against the risk of fraud. This involves a contextual analysis of the protective function of a will's formalities in light of the document itself.

*Liner*, 2019-02011, p. 6, 320 So.3d at 1138 (internal citations omitted). *Liner* also quoted *Succession of Porche*, for the proposition that "[a]ttestation provisions are sufficient which, in conjunction with the testament itself, reasonably indicate that the testament was executed in accordance with [codal] formalities." *Id.* (quoting *Succession of Porche*, 288 So.2d 27, 29-30 (1973)). The Court determined that the 2015 will was in substantial compliance with La. C.C. art 1579(2). *Liner*, p. 8, 320 So.3d at 1139. Most importantly to the case *sub judice*, the Court provided "[t]o the extent *Toney* stands for the proposition that an aggregate of slight deviations constitute a material deviation regardless of their cumulative effect on the risk of fraud, it is overruled." *Id.*, 2019-02011, p. 6, 320 So.3d at 1138. Accordingly, the Court vacated its original decree, affirmed the court of appeal's decision and

remanded the matter to the trial court for further proceedings. *Id.*, 2019-02011, p. 10, 320 So.3d at 1140.

Mr. McKlinski argues that *Liner* did not overrule *Toney* because *Liner* only applies to attestation clauses and not the signature requirements of La. C.C. art. 1577. We disagree. *Liner* specifically provides that *Toney* is overruled. *Id.*, 2019-02011, p. 6, 320 So.3d at 1138. However, the narrow issue before the Court in *Liner* was "whether the attestation clause…is substantially similar to the…requirement that the attestation clause verify a testator declared he signed his name 'at the end' and 'on each other separate page' of the testament." *Liner*, 2019-02011, p. 3, 320 So.3d at 1136. The attestation clause in *Liner* "only stated that it was 'signed' in the presence of the notary and witnesses." *Liner*, 2019-02011, p. 2, 320 So.3d at 1135. The attestation clause did not include "the language 'at the end' and 'on each other separate page.'" *Id.* at 1136.

*Liner* contextually analyzed whether the will itself first met formal requirements and then whether slight deviations in the attestation clause defeated an otherwise valid will. *See Liner*, 2019-02011, p. 6, 320 So.3d at 1138 (quoting *Porche*, 288 So.2d at 29-30; *See also Succession of Bilyeu*, 28,701, p. 3 (La.App. 2 Cir. 9/25/96), 681 So.2d 56, 59). The issue in the case *sub judice* is not the signature surrounding the attestation clause, as in *Liner*, but rather signed initials constituting substantial compliance with the formal requirements of the testator signature appearing on each separate page of the will pursuant to La. C.C. art. 1577.

As previously noted, Mr. McKlinksi maintains that the will is a nullity because Mrs. McKlinski did not sign her full name on the first page of the will. Conversely, Ms. Malone asserts the signed initials constitute Mrs. McKlinski's

9

signature on the first page. Ms. Malone's position in this assertion is supported by this court's decision in *Succession of Armstrong*, wherein we held that "[a]lthough the decedent placed only his initials on the bottom of page one as opposed to a more formal signature, his initials suffice for his signature." *Armstrong*, 636 So.2d 1109, 1111 (La.App. 4 Cir. 4/28/94). We find the same applies to the case *sub judice*. Mrs. McKlinski signed her initials on each page of the will. She signed her full name at the end of page two at the conclusion of disposing of her estate and signifying that the will was her "last will and testament." Mrs. McKlinski also signed her full name at the end of the will, below the attestation clause.

"In accordance with legislative intent, courts liberally construe and apply the statute, maintaining the validity of the will if at all possible, as long as it is in substantial compliance with the statute." *Liner*, 2019-02011, p. 4, 320 So.3d at 1137 (quoting *Succession of Guezuraga*, 512 So.2d 366, 368 (La. 1987)). Based on the record before this court, we find that Mr. McKlinski has not demonstrated that the December 16, 2019 will is not in substantial compliance with La. C.C. art. 1577. Mrs. McKlinski signed the will with her initials on each page and signed her full name at the end of the dispositive portion of the will and below the attestation clause and was thus in substantial compliance with La. C.C. art. 1577. Therefore, the trial court erred in granting Mr. McKlinski's "Petition to Annul Probated Testament." Finding that the will is valid on its face, we pretermit discussion of the trial court's decision not to consider the extrinsic evidence of Mrs. McKlinski executing the December 16, 2019 will.

## Decree

Based on the foregoing, we find the trial court erred in granting Mr. McKlinski's "Petition to Annul Probated Testament." The trial court's March 29,

2021 judgment, with respect to Mr. McKlinski's "Petition to Annul Probated Testament," is reversed and the matter remanded for further proceedings.

**REVERSED AND REMANDED**